IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

PETER M. LOPEZ and )
BARBARA M. LOPEZ, )
)
        Plaintiffs, )  TC-MD 120843C
)
    v. )
)
DEPARTMENT OF REVENUE, )
State of Oregon, )
)
        Defendant. )  **DECISION**

Plaintiffs appealed from Defendant's September 25, 2012, Notice of Deficiency

Assessment for the 2010 tax year, which disallowed Plaintiffs' claimed theft loss. Trial in the

matter was held in the Oregon Tax Courtroom, Salem, Oregon, July 10, 2013. Plaintiffs

appeared and testified on their own behalf. Defendant was represented by Lee Jordan and Dane

Palmer, Auditors with the Oregon Department of Revenue. Plaintiffs' Exhibits 1 through 13 and

Defendant's Exhibits A through F were admitted at trial.

## I. STATEMENT OF FACTS

The disputed losses stem from the construction of a home Plaintiffs hired a contractor to

build in 2005, on a lot they purchased in September 2004. Plaintiffs group their claimed losses

into three categories: 1) a $35,000 loss in fair market value of the home due to the builder's

alleged failure to complete construction of the home, the two major items being the lack of a

concrete floor in the basement and a 12 foot by 28 foot concrete patio; 2) alleged "extortion"

resulting from the contractor convincing Plaintiffs to purchase $36,475 worth of materials for the

home for which they were not reimbursed by the lender from the construction loan account as

promised by the builder; and 3) theft by deception due to the builder's "overages" caused by the

builder persuading the lender to approve draws either for work not completed or for amounts in excess of actual "cost," resulting in the depletion of the construction loan fund prior to the builder's completion of the home, causing the lender to require Plaintiffs to pay "an additional" $20,000. (Ptfs' Ex 1B; Trl Test) At the time of trial, the total claimed loss was $92,865. (Ptfs' Ex 13.2.) On their 2010 federal income tax return, Plaintiffs reported theft loss was only $16,266 after adjustments of approximately $6,000 required by the Internal Revenue Code (IRC), as discussed below. (Def's Ex C at 5-6.)

The events leading up to Plaintiffs' claimed theft loss are as follows. Plaintiffs purchased a lot in September 2004 and then signed a contract with a builder in 2005 to have a home erected on the property. (Ptfs' Exs 5-6; Trl Test; Def's Ex D at 2.) According to the sworn testimony, construction of the home began in October 2005 and was "completed" in October 2006, although work remained to be done. (*See also* Ptfs' Ex 10.1.) Plaintiffs and the contractor agreed to an adjusted contract price of $213,802 in January 2006. (Ptfs' Ex 5.1.) Plaintiffs testified that they ended up paying $286,000 for the construction of the home. According to the sworn testimony and a broker's letter dated August 1, 2012, Plaintiffs sold the home in May 2012 for $385,000. (Ptfs' Ex 10.1.)

As stated above, Plaintiffs originally claimed a theft loss of $16,266 on their 2010 tax returns ($22,275 loss less $100 subtraction required by code and the 10 percent of AGI limitation per IRC Section 165(h)(1) and (h)(2)(A)(ii)).[1] (Def's Answer at 4; Def's Ex F at 9.) That amount was apparently attributable to the additional funds Plaintiffs paid the lender in order for the lender to allow the construction project to continue, and included $2,275 in bank charges. (Ptfs' Ex 11.1.) Defendant audited Plaintiffs' 2010 Oregon return and denied the Schedule A

---

[1] The loss was reported on Plaintiffs' federal Schedule A and carried over to their Oregon return.

deduction on May 16, 2012, due to lack of substantiation. (Def's Ex F at 6, 9-10.) Plaintiffs timely appealed to this court. In their Complaint, Plaintiffs alleged a total loss of the $69,326 from theft and extortion. (Ptfs' Compl at 5.) That figure is the sum of the $36,475 Plaintiffs characterize as a loss by extortion relating to the unreimbursed materials they purchased, and $32,851 for work the contractor is alleged to have failed to perform, which Plaintiffs characterize in their Complaint as "[l]oss by withholding property from owner." (*Id.*) At trial Plaintiffs' increased the amount of their claimed loss to $92,865. (Ptfs' Ex 13.2.)

## II. ANALYSIS

IRC section 165(a) allows a taxpayer "a deduction [for] any loss sustained during the taxable year and not compensated for by insurance or otherwise." Such losses include losses arising from theft. IRC § 165(e); *see also* Treas Reg 1.165-8. Theft losses are deductible "during the taxable year in which the taxpayer discovers such loss." IRC § 165(e). The code limits the amount of the loss, when it involves property not connected with a trade or business, to the amount of the loss less $100, and further limits the amount deductible to "so much * * * as exceeds 10 percent of * * * adjusted gross income." IRC § 165(h)(1),(2)(A)(ii).

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 SCt 1039, 117 LEd 2d 226 (1992). The burden of proof in the Oregon Tax Court is a preponderance of the evidence and falls upon the party seeking affirmative relief. ORS 305.427.[2] A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).

/ / /

---

[2] All references to the Oregon Revised Statutes (ORS) are to the 2009 version.

"[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

In *Vieceli v. Department of Revenue* (*Vieceli*), TC 4947, 4948 and 4949, WL 4817045 (Nov. 29, 2010), this court stated:

> " 'Theft' in the context of IRC section 165 is broadly construed. *See Edwards v. Bromberg*, 232 F2d 107, 110 (5th Cir 1956) ("[T]he word 'theft' is * * * a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property * * * ."); *Grotheus v. Comm'r* (*Grotheus*), 84 TCM (CCH) 561, 568 (1992) ("The exact nature of a theft, whether it be larceny, embezzlement, obtaining money by false pretenses, or other wrongful misappropriation of property of another, is of little importance provided it constitutes a theft."). For purposes of the IRC, *whether a theft occurred depends upon the laws of the jurisdiction in which the loss occurred. Grotheus*, 84 TCM (CCH) at 568."

*Vieceli*, WL 4817045 at *3. (Emphasis added.)

Both in their written case summary submitted as an exhibit at trial and in their trial presentation, Plaintiffs insist they are entitled to a theft loss of $92,865 under ORS 164.085 for theft by deception, and ORS 164.075 for theft committed by extortion. It should be noted that both theft by extortion and theft by deception are generally encompassed under ORS 164.015, which provides the general definition of theft, but that ORS 164.075 sets out the specific legal requirements for theft by extortion in Oregon and ORS 164.085 for theft by deception. Those statutory provisions are set forth below.

With regard to Plaintiffs' theft loss claims, Plaintiffs allege that the contractor: 1) caused the fair market value of their property to be negatively affected due to an intent to deprive them of property and services they had purchased, decreasing the value of their home by $35,000; 2) committed theft by deception by submitting requests for payment (draws) to the lender which the lender failed to adequately review and audit before paying – Plaintiffs alternatively characterized this theft as theft by exaggerated bank draws and overcharging in the amount of

$21,390; and 3) committed theft by extortion in the amount of $36,475 when he persuaded Plaintiffs to purchase materials with the assurance of reimbursement when in fact the contractor allegedly knew that was not the case. (Ptfs' Ex 12.2.)

A.      *Loss in fair market value*

Plaintiffs insist that they suffered a $35,000 loss in the fair market value of their home due to theft on the part of the contractor. The nature of that theft was the contractor's failure to pour a concrete floor in the basement of the home, leaving it a 17 foot tall cavern with a dirt floor, and the contractor's failure to install a concrete patio outside the basement. Plaintiffs insist that the plans called for the patio to be 12 feet by 26 or 28 feet and provided entrance to the basement room. Plaintiffs did not submit the contract detailing that work. Plaintiffs' Exhibit 5, which they described throughout trial as their construction contract, notes only that there is to be a foundation, framing, roofing, siding, etc. Nowhere in that document is there any specific mention of a concrete basement floor or patio. There is mention of a garage slab, which the court assumes was to be concrete, but that is not the basement. (Ptfs' Ex 5.1.)

Turning to the relevant law in Oregon on theft, the court is not persuaded by the evidence that Plaintiffs' contractor took property from them with the intent to deprive them of that property, as required by ORS 164.015. ORS 164.015 provides in relevant part:

> "A person commits theft when, with *intent to deprive another of property* or to appropriate property to the person or to a third person, the person:
> "(1) *Takes*, appropriates, obtains or withholds such *property from an owner* thereof;
> "(2) Commits theft of property lost, mislaid or delivered by mistake as provided in ORS 164.065;
> "(3) Commits theft by extortion as provided in ORS 164.075;
> "(4) Commits theft by deception as provided in ORS 164.085."

(Emphasis added.)

/ / /

Plaintiffs submitted a letter from Isaac Silva, a real estate broker, who concluded that in his "professional opinion [Plaintiffs] lost at least $35,000 due to the contractor's deceptive business practices," which he describes elsewhere in the letter as unethical, noting that the builder "walked from the project at least 3 months before it was completed." (Ptfs' Ex 10.1.) The broker notes the absence of the 700+ square foot basement, the concrete patio that was to be installed outside the basement as an entrance to that area, and the builder's failure to install a stone exterior. (*Id*.) According to the sworn testimony, six months after Plaintiffs sold their home the home the buyer tried to force them to install the concrete floor in the basement, leading to legal action. Plaintiffs, however, acknowledged on cross-examination that they have had other business dealings with the broker Silva, and that he is their neighbor. That relationship, when considered in light of the language in the broker's letter, including his opinion that the contractor engaged in deceptive business practices, calls into question the impartiality of the broker and his opinion of loss in fair market value.

Without a detailed construction contract, the court cannot even determine whether the contractor was legally obligated to put in the concrete basement floor and patio. Moreover, assuming the contractor was contractually obligated to put in those items, his failure to do so does not appear to rise to the level of theft set forth in ORS 164.015.

Plaintiffs did argue alternatively at trial that the contractor's failure to perform the work they insist resulted in the $35,000 loss in fair market value falls under the definition of theft by deception found in ORS 164.085. A cursory reading of the statute, however, refutes that claim. First, theft by deception requires that the person guilty of theft "obtains property of another."

/ / /

/ / /

ORS 164.085(1).[3] There is nothing in the facts to show that the contractor obtained any property from Plaintiffs deceptively or otherwise. Additionally, there is no evidence in the record of a specific intent on the part of the contractor to deprive Plaintiffs of their property by acting in a manner that diminished the value of their home. Such intent is another statutory requirement for a finding of theft by deception. (*Id.*) This may well have been a situation where the cost of the project exceeded expectations and certain work was not done. Defendant asserts that Plaintiffs have failed to establish theft, and opines that their situation appears more likely to be a breach of contract, assuming the facts are as Plaintiffs present them. The court finds the evidence insufficient to determine whether the work that was not done was the responsibility of the contractor and if so, whether such work ultimately was not completed because of cost overruns and the depletion of the construction loan funds, or changes made to the home at the request of Plaintiffs which increased the cost of construction. The court is not able to conclude, on the evidence before it, that Plaintiffs have established the $35,000 loss in fair market value, or that any such loss was the result of theft deductible under IRC section 165.

B.      *Theft by extortion*

Nor is the court persuaded by the evidence that Plaintiffs were the victims of theft by extortion as defined in ORS 164.075.

ORS 164.075 defines theft by extortion as follows:

> "(1) A person commits theft by extortion when the person compels or induces another to deliver property to the person or to a third person by instilling in the other a fear that, if the property is not so delivered, the actor or a third person will in the future:
> "(a) Cause physical injury to some person;

---

[3] The relevant language in ORS 164.085 provides: "(1) A person, who obtains property of another thereby, commits theft by deception when, with intent to defraud, the person [creates or confirms a false impression, sells property without disclosing adverse impediments, promises to perform an act the person does not intend to perform knowing it will not be performed, etc.]." The text of the statute is set out more fully later in the court's Decision.

"(b) Cause damage to property;

"(c) Engage in other conduct constituting a crime;

"(d) Accuse some person of a crime or cause criminal charges to be instituted against the person;

"(e) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule;

"(f) Cause or continue a strike, boycott or other collective action injurious to some person's business, except that such conduct is not considered extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act;

"(g) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense;

"(h) Use or abuse the position as a public servant by performing some act within or related to official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely; or

"(i) Inflict any other harm that would not benefit the actor."

Plaintiffs' alleged $36,475 theft by extortion relates to materials Plaintiffs purchased at the suggestion of the contractor. Plaintiffs testified that the contractor assured them that the lender would reimburse them for the cost of the items they purchased, but the builder had already been paid by the lender for those items. Plaintiffs acknowledged at trial that the materials they purchased were installed in the home, so one question is whether Plaintiffs or the contractor were contractually obligated to purchase the materials Plaintiffs insist they bought. Plaintiffs did not submit any receipts showing their alleged purchases.

The "extortion" Plaintiffs claim as a theft loss stems from the contractor submitting "draws" to the lender for the same items the contractor purportedly encouraged Plaintiffs to buy, because the lender and apparently the contractor both refused to pay Plaintiffs for those materials. Plaintiffs rely on a letter from an attorney they hired as part of a suit against the contractor, written to the contractor's attorney. That letter is dated April 23, 2010, and pertains to an arbitration between Plaintiffs and the contractor. (Ptfs' Ex 6.) The letter indicates that Plaintiffs paid $36,475 for materials they purchased and states Plaintiffs "deserve reimbursement from the loan fund which they never received because [the contractor] overdrew the loan

account." (Ptfs' Ex 6.2, *see also* Ptfs' Ex 13.1.) Without a detailed contract and receipts for the purchases Plaintiffs contend they made, there is insufficient evidence for the court to determine whether Plaintiffs even bought the items. Assuming they did, there is insufficient evidence for the court to conclude Plaintiffs were compelled by the contractor to purchase the materials they insist they bought. Additionally, the statute defines theft by extortion as the compelled or induced delivery of property to another person "by instilling in the other a fear that, if the property is not so delivered, the actor or a third person will in the future [cause them physical injury, cause damage to the property, engage in some other conduct constituting a crime, etc.]." ORS 164.075(1).

From a practical standpoint, there may have been other change orders between Plaintiffs and the contractor while the project was underway, increasing the costs of construction and thereby depleting the construction loan fund before all of the work was completed. It is also possible, as is often the case, that when the project was underway, the actual costs exceeded the contractor's projections. Plaintiffs insist that they entered into a fixed cost contract, but their own exhibit, which they have described as their contract, is, as previously noted, a change order that appears to be due to the placement of the home "7 feet further back," "[a]dditional charges for concrete required for additional wall heights," and "[g]ravel charges for additional height[] of garage slab." (Ptfs' Ex 5.1.) That change order shows that shortly after the project got underway a decision was made to place the house in a slightly different location and that relocation appears to have necessitated higher walls and a higher garage slab. (*Id*.) The amount of those changes was $7,459. (*Id*.)

The court simply cannot find from the evidence presented that Plaintiffs' contractor convinced them to buy materials the contractor was obligated to purchase, with the promise of

reimbursement, and if that was the case, the situation, however characterized, does not satisfy the statutory definition of theft by extortion.

C.    *Theft by deception*

Finally, Plaintiffs contend that the builder committed theft by deception when he submitted fraudulent statements to the bank which the bank neglected to properly review/audit, and, as a result, paid the contractor amounts in excess of the cost of the work actually done. Plaintiffs contend that the excess amount is $21,390. (Ptfs' Ex 12.2.)

Theft by deception is defined in ORS 164.085, and involves a false impression of intent on the part of the actor, who in this case would be the contractor. ORS 164.085 defines theft by deception in relevant part as:

> "(1) A person, who *obtains property of another* thereby, commits theft by deception when, *with intent to defraud*, the person:
> "(a) Creates or confirms another's false impression of law, value, intention or other state of mind that the actor does not believe to be true;
> "(b) Fails to correct a false impression that the person previously created or confirmed;
> "(c) Prevents another from acquiring information pertinent to the disposition of the property involved;
> "(d) Sells or otherwise transfers or encumbers property, failing to disclose a lien, adverse claim or other legal impediment to the enjoyment of the property, whether such impediment is or is not valid, or is or is not a matter of official record; or
> "(e) Promises performance that the person does not intend to perform or knows will not be performed.
> "(2) "Deception" does not include falsity as to matters having no pecuniary significance, or representations unlikely to deceive ordinary persons in the group addressed. For purposes of this subsection, the theft of a companion animal, as defined in ORS 164.055, or a captive wild animal is a matter having pecuniary significance.
> "(3) In a prosecution for theft by deception, the defendant's intention or belief that a promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed."

(Emphasis added.)

/ / /

Plaintiffs' evidence consists of several items. The first is a letter from the lender dated July 21, 2006, referring to "overages on [Plaintiffs'] construction project," and noting that "construction has been stopped and no more funds will be paid until [the lender] receives adequate funds." (Ptfs' Ex 12.1.) The lender goes on to state that one option is for Plaintiffs to pay "[a]n advance of $20,000." (*Id*.) Plaintiffs acknowledged they paid the $20,000. There is no independent substantiating evidence, but the court will assume Plaintiffs did indeed transfer that amount to the lender. Another is a document Plaintiffs described at trial as the builder's cost breakdown, which they testified was done at the request of the bank, and a document Plaintiffs prepared which purports to set forth the amount of money paid by draws, the actual cost for the materials and work performed, and a tally of the difference between the two, which comes to $21,390. (Ptfs' Exs 12.2-12.3.)

However, Plaintiffs acknowledged on cross-examination that they were required by the lender to come into the bank and sign all of the contractor's draws. While Plaintiffs place all the responsibility and fault on the lender, Defendant asserts that Plaintiffs also bore responsibility for reviewing the contractor's draws to determine if the payment requests were legitimate. Plaintiffs also acknowledged on cross-examination that they monitored the progress of construction, and documents submitted in evidence by Plaintiffs indicate that they performed some of the labor themselves to save money. (Ptfs' Ex 6.2.) It appears to the court that the alleged theft by deception was due at least in part to Plaintiffs' failure to properly monitor the expenditure of the funds they approved.

Additionally, the evidence is insufficient for the court to ascertain whether the lender sought payment in excess of the appropriate amounts. The only "contract" Plaintiffs submitted to the court is an updated "Change Order Request" which indicates the original contract sum of

$206,343, additional work totaling $7,459, for a new contract amount of $213,802. (Ptfs' Ex 5.1.) Plaintiffs included a two page document titled "Description of Materials and Itemization of Costs," which was intended to show the scope of the parties' construction agreement. (Ptfs' Exs 5.2-5.3.) There are two problems with that document. First, it only contains generalized items (e.g., $8,000 for plans, permits, architect's fees, $25,900 for framing and sheathing, and $14,500 for the associated labor, $3,255 for siding, etc. (*See* Ptfs' Ex 5.2)) Without more details about the parties' construction agreement, the court cannot determine whether the work Plaintiffs insist the contractor failed to perform was in fact part of their agreement. The second problem is that the total dollar amount of the work set forth in Plaintiffs' itemization is $98,905; that figure does not match either the original contract sum or new contract sum included in the January 8, 2006, Change Order Request which Plaintiffs described at trial as their construction contract. The numbers simply do not add up. (*See* Ptfs' Exs 5, 12.2-12.3.)

As with the other theft claims Plaintiffs have asserted and for which they seek a deduction on their 2010 tax return, the evidence does not satisfy the statutory requirement in ORS 164.085 that property was obtained from Plaintiffs by the contractor with an intent to defraud. The court notes that subsection (3) of the statute provides that "in a prosecution for theft by deception, the defendant's intention or belief that a promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed." This is an income tax case and not a criminal prosecution for theft by deception, but that language is helpful in evaluating Plaintiffs' theft claim in this case because there is insufficient evidence of the promise of performance that was not fulfilled that required Plaintiffs to pay the lender an additional $20,000.

/ / /

D.     *Year of the loss*

In closing, the court notes one final obstacle to Plaintiffs' claim. There is a timing problem. IRC section 165(e) requires that the loss, if it arises from theft, must be taken "during the taxable year in which the taxpayer discovers such loss." During trial Plaintiffs testified that they became aware of the loss in either 2008 or 2009. However, they have reported the loss on their 2010 return. Thus, if the court were persuaded by the evidence that Plaintiffs were entitled to a theft loss, it would not be deductible on the 2010 return.

The law does recognize what in this case would amount to an exception to the general code provision requiring that the loss be claimed in the year it is discovered by the taxpayer. If there is a reasonable prospect of recovery based on a claim for reimbursement then the loss is reported when and if it can be demonstrated that there no longer exists a reasonable prospect of recovery at the end of the year. *Viehweg v. Comm'r* (*Viehweg*), 90 TC 1248, 1255-1256 (1988); *Ramsay Scarlett & Co. v. Comm'r* (*Ramsay*), 61 TC 795, 811 (1974), aff'd 521 F2d 786 (4th Cir. 1975). The court in *Viehweg* noted that the tax code regulations (Sections 1.165-8(a)(2) and 1.165-1(d)) and its earlier decision in *Ramsay* require that the taxpayer have "no recourse or prospect of recovery in order to be entitled to a [theft loss] deduction." *Viehweg*, 90 TC at 1256, *citing Ramsay*.

Plaintiffs in this case pursued reimbursement against the lender, and got some form of rejection from the lender to their request for monetary compensation in a letter dated December 23, 2010. (Ptfs' Ex 8.1.) It is not clear from the documentary evidence or testimony whether that ended Plaintiffs' dispute with the lender. Plaintiffs, however, were also pursuing some form of compensation from the City of Eugene for the city's alleged liability for allowing the home to be approved for occupancy when there existed, from Plaintiff's' perspective, code violations.

Plaintiff submitted an exhibit showing that on February 9, 2011, the city offered to settle the matter for $3000 without admitting liability. (*See* Ptfs' Ex 9.1.) It appears that Plaintiffs continued to pursue legal action against the city, with a judgment of dismissal entered by the Lane County Circuit Court August 10, 2011. (Ptfs' Ex 9.2.) Those documents, which are supported by Plaintiffs' testimony at trial, show that Plaintiffs still believed there was a prospect or possibility for recovery after the end of the 2010 tax year. That would make their claim for loss in 2010 premature.

The court's discussion about the timing of the claimed loss is not intended to be, and should not be construed, as the basis for its determination that Plaintiffs' tax or 2010 claimed theft loss was properly denied by Defendant and will not be allowed by the court. It is merely intended to demonstrate further problems with Plaintiffs' theft loss claim.

### III. CONCLUSION

The court concludes that Plaintiffs have failed to establish their entitlement to an IRC section 165 theft loss by a preponderance of the evidence. As explained above, the court is not persuaded that Plaintiffs were necessarily the victims of theft. There are also substantiation problems with virtually all aspects of Plaintiffs' case. Plaintiffs have failed to establish a loss in the fair market value, as they have alleged. Plaintiffs have failed to establish that they purchased materials the contractor was obligated to purchase because they did not submit receipts, and, if they did indeed purchase those items, the evidence is insufficient to establish whether any such purchase was due to extortion, as Plaintiffs have alleged, or the results of cost overruns and additional agreements between the parties. Finally, the court is not persuaded that the additional $20,000 Plaintiffs contend they deposited with the lender in order to allow the contractor to continue working on the home was the result of theft by deception. And, as stated above, all of

the actions Plaintiffs characterize as some form of theft or not, in the court's opinion, do not

meet the statutory requirements for theft.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of August 2013.


DAN ROBINSON
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on August 13, 2013.  The Court filed and entered this Decision on August 13, 2013.*